I believe the next item on our docket is Anderson v. State of Illinois Human Rights Comm'n et al. 5-25-0268, attorney for appellant and appellee, both present. Alright, are you ready? I am ready. Alright, if you would like to proceed, just come forward and please state your name for the record. Yes, my name is Daryl Dunham, may it please the court. I'm representing Anthony Anderson, who is the complainant, now an appellate before the court. I don't need to dwell very long on the facts. He was, my client used to be an employee at Chester Mental Health, which is the, that's a division where those people that have sustained some kind of violation of our criminal laws have been lodged in the mental health system. They're considered to be a danger to society and to themselves in most instances. He was basically a basic laborer there. It is job title, but on January 21st, 2019, there was an incident with one of the patients there. There's no dispute that he touched the patient on two occasions, and it was observed by other employees, and then an investigation resulted as a, primarily conducted by a fellow by the name of Barry Smoot, also an employee. That led, that investigation not only led to his discharge from employment, but also a referral for criminal prosecution. He was convicted of misdemeanor, which was actually appealed. He lost it in an appeal to this court, and now he has permanent bar from state employment. So he filed charges with the Illinois Human Rights Commission that the, that the administrative law judge basically granted the state's motion for summary determination. We filed an affidavit in opposition to that motion for summary determination, but the commission ultimately accepted the administrative law judge's recommendation, and so now we took this appeal. I think it's significant, these following facts are significant, because when they moved for summary determination, we had priorly asked in an auditory, and asked a list of every employee from the stated period of time in Chester Mental Health that had been disciplined for violating procedures for inappropriate touching of an inmate. And that's found in Exhibit D in the record. And so my client produced an affidavit which attached Exhibit D. And in Exhibit D, he pointed out, and this is very significant because the state did not choose to rebut any of the allegations in this affidavit. And he pointed out in that affidavit that of all of the other employees listed in Exhibit D, he'd be the only one that had been referred out to criminal, for criminal prosecution. Of course, there's no dispute, he's African American. What's also significant about this is that Smoot, who conducted the investigation, had circulated amongst the staff at Chester Mental Health that my client falsely had distributed nude pictures of his white girlfriend within the mental health unit and other places. And he just flat out denies that. But it's very significant. Why would Smoot take it upon himself to circulate these kinds of charges anyway? He said that five of the people in the exhibit had been reemployed, even though they had been found disciplined for inappropriate touching. There were five, at least five, that were not disclosed in discovery. That in his particular case, that the inmate had not, the patient had not suffered any injuries at all. And that's significant because we took the deposition of Hayman, who was actually there at the time of the incident. And Hayman admitted there were many instances when he adverted inappropriate touching, did not write up an incident report at all. And he only, in most instances, he did decide to write up an incident report where there were injuries that had been sustained. But in this case, the patient had not suffered any injuries at all. There was no medical treatment or the like. The affidavit, my client's affidavit indicated that the touching was very mild. And that you can expect in a unit like this, it's going to be just a very frequent daily occurrence where the employee who is dealing with the patients on a routine basis, we're going to have to touch the inmate. So, this affidavit, there's nothing in the record contradicting this affidavit. I guess it wouldn't make any difference if there was because that presents tribal issues of fact. Well, why is there no tribal issue of fact according to the ALJ? First thing that should be pointed out, that the ALJ focused on that part of the complaint that was filed by a lawyer in a state employee, lawyer turning in the commission, working for the commission. And one of the allegations in there was that it was alleged on the basis of race that other employees had not come to his aid while he was having this intervention with the patient. And the reasons why they didn't come to the aid is because on the basis of race. Well, the ALJ said that the complaint alleged and we had not refuted that allegation. We had proven that allegation sufficient to be taken to a hearing because we hadn't found somebody that was similarly situated. I elected not to challenge that on appeal. I think on balance, I don't want to waste the court's time. I think that's probably sustainable on the record. And the fact that as a result of this prosecution, he was barred from state employment. ALJ and the department concluded that had been procedurally defaulted. Well, how had it not been procedurally defaulted? They read, the ALJ read the complaint as saying that count one of the complaint was essentially only for discharge. And Anderson had previously, pro se, had filed a human rights complaint seeking relief for his illegal discharge. And so that was basically raciocata. Didn't use the word raciocata, but that's essentially what I think the argument was. And I think that's true. And those charges should remain in place in the way that the ALJ read count one. And I don't think that even if you look at the prior, there was a prior administrative law judge, and it's in the appendix. It made some rulings with regard to count one. And I think the prior administrative law judge had, in this particular case, ruled that the illegal discharge had been defaulted. And I don't think you can read that prior ruling as saying that the other charges in count one and count two have been procedurally defaulted. I just think that was an arithmetic one. We put it, attempted to point that out. So, and I think it's just a very myopic reading of this complaint, counts one and counts two, to say that the only thing that Anderson was complaining about was that he didn't get help in this intervention, and that he was being discharged. In fact, if we point out both in the opening brief and the reply brief, we point to actual allegations. Weren't they counsel, though, reprimanded for not helping the patient? Wasn't that the issue for the two guards that were there? Weren't they, in fact, reprimanded because they didn't assist the patient? I don't think that might be true. I don't think that's germane to anything that this court has to decide. Well, except you're suggesting that they should have helped your client. They were reprimanded for not helping the patient. I probably was unclear, and I apologize, Your Honor. We're not advancing that particular substantive ground on appeal. The athlete spent a lot of time talking about it. But we're not, insofar as that particular claim of discrimination, I think summary determination was appropriate. We do not agree, however, that what is plainly alleged in the complaint, counts one and count two, is that this guy, out of, I think there's about 60 people during the relevant time frame, that had been disciplined for inappropriate touching patients, this guy, my guy, Anderson, is the only one, the only one that got referred out for criminal prosecution. And he's African American. And what's the justification for that? No effort made by the state in this case to refute these allegations. They have to be taken as true. Well, what is the argument they get around it? It has been procedurally defaulted. The argument is being made, well, if that's really what you believe, then before I got involved in the case, should have amended the complaint to make those charges. But the charges are set forth in the complaint. Allegations in both count one and count two saying that he got referred out for criminal prosecution. And read as a whole, it's clear that the state has been put on notice that with regard to the prosecution and the forfeiture of employment, that complaint, both count one and count two, is claiming that it was done on the basis of race. And it's buttressed by the fact that we had this memo, or whatever you want to call it, falsely charging my client of circulating nude photos of his white girlfriend. This is smooth. He's the guy that circulated that memo. He's the guy that did the investigation. Now, I'm sure the court is well aware, we've all run into the question of summary judgment and when should summary judgment be granted and when should it not be. I don't think the standard for granting summary determination is any different than granting summary judgment. In fact, you see in the cases, they tend to cite the summary determination cases, do cite cases about summary judgment. And in the summary judgment context, the court is on the obligation, I would argue the commission and the ALJ, is on the obligation to search the record and construe the complaint liberally. We're not supposed to be losing cases on the merits by some super technical reading of the complaint. And that's exactly what they did. What the ALJ did and the commission affirmed, they took a black felt tip marker and they just obliterated all of the allegations about the referral out for criminal prosecution. And they couldn't have done that, shouldn't have done that. And so for these reasons, we think the case needs to be remanded so that a trier effect. And one last point on the issue of summary situated other employees. The federal cases that the Illinois courts look to, and looking and construing our own act, look to federal cases. And all of the federal cases say, unless it's just overwhelmingly obvious the issue of who is a summary situated employee, that's a question of fact. That's something for the jury to decide. Thank you, Your Honor. No further questions? Thank you. No questions. All right. Thank you a lot of time and rebuttal. If you wouldn't state your name for the record, please. Let's just keep in mind here that this is a racial discrimination case. That's all that it is. And the most important thing to keep in mind about that is no matter what theory is included in the complaint, the commission's summary decision was correct because there was no evidence to support a prima facie case of racial discrimination. Now, no matter what theory you find, whether it's referral out for prosecution, which I'll talk a little bit more about later, a failure to intervene, or an exclusion of count two, it doesn't matter. Because they all suffer from the same evidentiary flaws that show why the commission was correct. And just procedurally, count two was dismissed, is that correct? Yes. Okay. It was just count one that remained, correct? Yes. All right. Thank you. Yes, that's correct, Your Honor. And importantly, three points. There was no evidence of racial animus by anybody at Chester. And that is no department employee did or did not do anything because Mr. Anderson was black. And this allegation about the distribution of pictures is totally irrelevant, has nothing to do with racial discrimination. And on the comparator issue, there was no sufficient comparator identified outside of Mr. Anderson's protected class who was treated more favorably. This incident involving Mr. Apple was far more serious. Mr. Apple was hospitalized. He had called for help during the altercation, and it took, I think the record will reflect, another three to four employees to help subdue the patient. And Mr. Apple had to go get medical treatment. Other non-black employees were discharged for physically abusing the patient. And I think the document that counsel was pointing to, I refer to it as C-2821, that's the most legible version. We created a more legible version of what was attached to Mr. Anderson's affidavit. But most significantly, no non-black employees were cited for abuse and convicted of a criminal charge, but not discharged. And the other issue about commentary about the comparators, there was nobody who fit Mr. Anderson's scenario, black, non-black, anybody. And there was some sort of a reference that counsel made to employees who had been noted to have committed physical abuse but were reinstated. That reinstatement, and this is beyond the record, if you'll pardon me, but I'll make this representation. That reinstatement occurred after the employee would have gone through a labor dispute process through a union to gain reinstatement. And there were a couple instances of that, but that's where it can be found in the record. And there was no adverse action against Mr. Anderson because of the incident, because he was identified as the abuser, as Your Honors has correctly identified. And that designation negated any allegation that other employees should have helped him. And there was commentary from counsel about, oh, you know, Mr. Anderson's affidavit, he testified or attested or brought it forward. Or both, that he just mildly contacted the patient whose name is initialized to grant him some anonymity. But, of course, he ignores all this other testimony from other eyewitnesses where it said Anderson slapped the patient, Anderson hit the patient in the head. Anderson's contact with the patient caused the patient's head to rotate. And Ms. Stauffer, who was present in the room at the time, testified that she told Anderson after this incident, you shouldn't have done that. And so to try to make Mr. Anderson's conduct seem more mild than it really is, is belied by the record. And the comments that counsel brought up do not create any genuine issue of material fact because of the way that the evidence exists here. And that designation of Mr. Anderson as the abuser, it also required the department, being in this case Mr. Smoot, to report the matter to the OIG, the department's Office of Inspector General. Now keep in mind, when Mr. Smoot makes that report, first he's required to do it, and second, it's still within the Department of Human Services, which has its own Office of Internal Investigations, and that's what he's required to do. And it's the, I can't say this, I've got too many initials here, I have to say it correctly, Office of Inspector General, that's what I mean. The department's Office of Inspector General then starts its own investigation, and it's the Office of the Inspector General that then contacted the Illinois State Police. And it's the Illinois State Police that then conducted their own investigation. The Inspector General's report that I get this from, it's, I believe it's, the complete report's in there, but page 2183 of the record is what rings a bell, as to be the place where this narrative really exists. Yeah, once it was referred to the State Police, the State Police conducted their own investigation, independent of the department, and the department has no control over that, and as Your Honor correctly points out, the substantiated, the charge of patient abuse. Well, even then, the State Police, as you all well know, they can't decide whether a claim should be prosecuted. They have to refer it to, as they did, to the Randolph County State's Attorney's Office. The State's Attorney then looks at it and decides whether there's enough evidence to prove a crime beyond a reasonable doubt. And so the State's Attorney makes that determination. None of these determinations and the phrasing of referral out for prosecution, I think, is a complete misnomer. The department didn't do that, neither Mr. Smoot nor the Office of the Inspector General. They just contacted the public authorities, who ultimately, totally independent of the department, make that determination. So whenever Mr. Anderson was convicted of this offense, then is it an automatic, then, bar to future employment? Is that the case? Well, what happens is, when he, the way I understand it, Your Honor, is when he's convicted, then that goes back to, now I have to get all these internal agencies straight in my head before I give you the answer, so I'm trying to be correct. It goes back, ultimately, to the Department of Human Services has an internal Department of Labor Relations. That might not be its exact title, but that's pretty close. And then it's the Department of Labor Relations that then makes a recommendation to discharge. And yeah, after the discharge, that's correct. After the criminal conviction, yeah, there is a bar towards state employment. But the whole point of this is, none of that was racially motivated, and there's absolutely no evidence at all. My question is, once the department refers the matter out and then there's a conviction, does the department then have any discretion to allow Mr. Anderson to continue his employment? The only way that that would happen, as I understand it, is if Mr. Anderson would take it up, as a couple of these other employees apparently did, take it up through the union labor relations process to gain reinstatement. So, again, from a substantive perspective, with this as a racial discrimination case, there's absolutely no evidence of any of the material elements of a prime facie case of racial discrimination. And forgive me, there was a prior case that the ALJ found that Count 2 had been dismissed. And then Count 2 was not properly before the judge or the commission at that time. Is that correct? Am I understanding that procedurally? That's pretty close. Since you asked, I'll elaborate a little further as to what I know. Mr. Anderson did bring a prior charge under the Human Rights Act of wrongful termination based on his race. And there was a, you know, it went through the proper Department of Human Rights and Human Rights Commission procedures, and there was a determination that there was a lack of substantial evidence of any racial discrimination toward him and his discharge. And that Human Rights Commission decision, we attached that as a supplemental appendix to our brief. And ALJ Robinson, I believe it was, the first ALJ who had this case, he seized on that when he was somewhere in the process of making his summary judgment determination, whether it was Robinson or the second ALJ, I'm not clear as I stand here right now, but one of them did. Seized on that determination and said, oh, this discrimination based on, you know, wrongful termination based on race, been there, done that. That's already been decided. And there was no substantial evidence. So then that was, he then excluded that from the case. And it's not part of the ultimate recommended order and decision that the commission adopted. And it's something that we would be prohibited essentially from addressing in this court, correct? I think so. Yes. Yes. Yes. And also, technically speaking, I think it was forfeit below because Mr. Anderson, toward my reading of the record, didn't raise it in any of his exceptions before the commission. And if that happens, then it's, I think we address this in our briefs, it's either a forfeiture or a failure to exhaust administrative remedies on that particular point. So, yes, that would not be properly before the court. I just want to make sure I've responded to everything that counsel brought up, and I believe that I have. Again, I would just reiterate that another thing that's telling is, in his recall brief, Anderson only contests the limitation of count one to the failure to intervene theory. Now, if your honors would like to talk about that limitation, I'm happy to do it, but I'm also prepared just to stand on my briefs in that regard. But he doesn't contest anything else that was raised in our response brief, such as no discriminatory animus, no department employee actually referring for prosecution, and, again, the exclusion of count two. That's not necessarily a forfeiture or a jurisdictional bar to your consideration of those issues, but it's very telling that he didn't argue them in his reply brief. Now, all of that just points to the conclusion that there was not sufficient evidence to raise a genuine issue of material fact on all of the elements of a prima facie racial discrimination case, which is what this is. The commission's findings of fact supporting its decision are deemed to be true and correct, and summary decision for the department is proper. Unless there's anything else your honors would like me to address, I will stand on my briefs, and thank you for your time and attention today. Thank you, counsel. All right. Rebuttal? Thank you, your honor. And if you would, would you address this issue of forfeiture of count two and any of the arguments that were made? I mean, do you agree that count two is not before this court? No, I don't. You don't agree with that. Okay. And here's the reason why. Okay. It is true. Count two does have language in there about the fact that he was discharged. That element of relief in count two has been forfeited. If you look at count two, however, in count two he alleges, in count two, also in count one, that he was referred out for criminal prosecution. And taken fairly, he's saying he got discriminated against on the basis of race for having that being referred out for criminal prosecution. And Smoak didn't have anything to do with the discharge. He's a different actor. He's the one that, if the case comes back, that we're going to aim the hearing about. The question was raised, well, there's no evidence of racial animus. Well, look, we're all familiar. It's very, very rare. You're going to find any evidence in the record in a racial discrimination case where the employer or whoever it is says, I don't like you because you're black and I'm going to fire you for that reason. You have to be able to look at the inferences. I'd like to put Mr. Smoak under cross-examination and say, how many other people have you circulated in the Chester Mental Health? What about the contention, though, that the Office of the Inspector General is the one that instituted the investigation and then referred this to the state police? I'm glad. What's that got to do with Mr. Smoak? I'm glad that you asked that question because although we didn't raise it extensively in our brief, it's in the record. In our affidavit, we attach Rule 50. Smoak had to follow Rule 50, which does mean you get the Inspector General involved. But in this case, he went directly to the state police. That's in the record. So he should know what Rule 50 says, and he didn't follow Rule 50, and our affidavit indicates that he didn't follow Rule 50. Also, you know, it's interesting that if you look at Hayman's deposition, he said he agreed that the reporting requirement was mandatory. But he said he rarely, if there wasn't any actual physical injury involved, that was a significant factor in when he wrote the employee out for further investigation. As a practical matter, there's probably inappropriate touchings going on, at least at this time and probably still going on there to this day, that are not referred, that are not written up, that any investigating team is not involved in, that the IGs never gets involved in, and this is the only one. We don't assume that's not necessarily in the record, though. I mean, we're assuming that's not in the record at this point. No, no. Hayman's deposition is in the record. And he says that there is unlawful touching by staff to patients? He says, I asked him, how frequently do you see inappropriate touching there that violates the policy? He said, it's a frequent occurrence. I said, how often do you write it up and report it up? He says, it's a discretionary thing, and the factor that I take into consideration is whether there was actual need for medical treatment. That's in the record. And I think you can infer that Hayman's policy is not unique, Your Honor. The simple fact of the matter, it's undisputed, this is the only guy that got referred out for criminal prosecution. Just the mere fact that some white employees were discharged, which is true, doesn't negate the fact that my guy got referred for criminal prosecution. Again, we're not saying the commission can't and this court can't intervene with the decision that he was discharged. What this is about is that he got criminally prosecuted. But the adverse employment action was the discharge, was it not, that stemmed from the referral? That's an adverse employment action. Getting referred out for criminal prosecution is also an adverse employment action. Are there any cases that hold in that regard? I couldn't find a case that specifically says referral for criminal prosecution is an adverse employment action. Although I do cite cases that sets the standard as whether that action would be, would motivate the employee to proceed in a manner that he otherwise would be entitled to do. To avoid criminal prosecution, that certainly is an adverse employment action. I do spend some time in my brief on that very issue, Your Honor. All right, thank you. We will take this matter under advisement. We will issue a ruling in due course. Thank you very much.